**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MARY-ROSE F. CALEZNO,

                              Plaintiff,

            v.

WASTE MANAGEMENT, INC., et al.,                No. 1:24-CV-1499
                                               (AMN/PJE)

                              Defendants.

**APPEARANCES:**

Mary-Rose F. Calenzo
553 Coyote Circle
Midway Park, North Carolina 28544
Plaintiff pro se

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

### I. **In Forma Pauperis**

Plaintiff pro se Mary-Rose F. Calenzo ("plaintiff") commenced this action on December 10, 2024, by filing a complaint. *See* Dkt. No. 1. In lieu of paying this Court's filing fee, plaintiff submitted an application for leave to proceed in forma pauperis ("IFP"). *See* Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(d).

that she financially qualifies to proceed IFP.[2]  This Court must now assess the merits of plaintiff's complaint pursuant to 28 U.S.C. §§ 1915; 1915A.[3]

## II.  Initial Review

### A.  Legal Standards

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action."  *Praileau v. Fischer*, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest."  *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks and citation omitted).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest.  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party

---

[2] Plaintiff is advised that although she has been granted IFP status, she is still required to pay any fees and costs they may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

[3] These requirements apply equally to non-prisoner pro se litigants.  *See* N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. §1915(e)(2) and 28 U.S.C. §1915A when an application to proceed in forma pauperis is filed.").

2

> from compliance with relevant rules of procedural and substantive law. . . .

*Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks, citations, and footnote omitted*); see also Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted).  Thus, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims.  Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with . . . the Federal Rules of Civil Procedure."[4] *Kastner v. Tri State Eye*, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994)).[5]  Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to

---

[4] Hereinafter, "Fed. R. Civ. P."
[5] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

relief." FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).  Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction . . .  and . . . a demand for the relief sought . . . ."  FED. R. CIV. P. 8(a).  Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  FED. R. CIV. P. 8(d).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  *Flores*, 189 F.R.D. at 55 (internal quotation marks and citations omitted).  A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims."  *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint."  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.

1988) (citations omitted).  However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id*. (citations omitted).

III.  **Discussion**

A.  **Plaintiff's Complaint**[6]

Plaintiff states that she was employed by Waste Management, Inc. ("Waste Management") as a truck driver from March 5, 2018, to January 18, 2022.  *See* Dkt. No. 1 at 9; Dkt. No 1-2 at 5.  Plaintiff's complaint names Waste Management as a defendant, along with the following individuals, who were or are employed by Waste Management: (1) James Dennis ("Dennis"), route manager for commercial; (2) Michael Glass ("Glass"), route manager for industrial; (3) Raymond Bender ("Bender"), safety manager; and (4) Joseph Mazzelli ("Mazzelli), district manager.  *See id*. at 7, 9.

Plaintiff's complaint is based on the following events. [7]  On March 5, 2018, plaintiff signed an employment contract with Waste Management to be a truck driver.  *See* Dkt. No. 1 at 9.  The employment contract detailed Waste Management's terms of employment and specified that a violation of company rules could be grounds for termination.  *See id*. Plaintiff alleges that in "11/2021," "Dennis harassed [her] to follow his directions" to increase plaintiff's work efficiency, despite his "directions" being unsafe and in violation of the Waste Management's rules of employment.  *Id*.  Plaintiff states that Dennis refused

---

[6] Plaintiff included three attachments with her complaint.  *See* Dkt. Nos. 1-1, 1-2, 1-3.  These attachments have also been reviewed in connection with the initial review of plaintiff's complaint.  *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (internal quotation marks and citations omitted).

[7] Plaintiff's complaint appears timely.  The EEOC issued a right-to-sue letter on September 13, 2024, and plaintiff filed her complaint within ninety days from that date.  *See* Dkt. No. 1-1 at 1.

to listen to her safety concerns about the truck she was assigned and insisted she drive the truck despite that it could reach a maximum speed of forty-five miles-per-hour and "she was required to drive on a toll road with a speed limit of 65." *Id*. Plaintiff brought this issue to Mazzelli's attention and explained that she did not feel safe following Dennis' instructions. *See id*. Mazzelli then instructed Bender "to determine if [Dennis'] instructions were safe." *Id*. Plaintiff asserts that Dennis, Mazzelli, and Bender "were all aware of Waste Management[']s policies regarding the directions [] Dennis was giving. And they were all aware that his instructions were in fact prohibited . . . and unless a safety policy was changed to allow such activities, they could not force [her] to follow [] Dennis' instructions." *Id*. Plaintiff claims that Dennis was "intentionally setting [her] up to fail." *Id*.

On January 10, 2022, plaintiff arrived to work at 3:30 A.M. *See* Dkt. No. 1 at 10. "The truck assigned to her wouldn't start." *Id*. Plaintiff claims that this prevented her from performing a "proper pre trip" safety inspection of her truck before beginning her route, as the New York State Department of Transportation ("DOT") and Waste Management rules require. *Id*. Plaintiff asked Dennis if she could use a spare truck. *See id*. Dennis denied this request and "gave her an ultimatum of either she take the inoperable truck as planned or go home." *Id*. Dennis explained that the use of her assigned truck was necessary "to assist a Commercial Waste route driver who was repeatedly coming in overweight" and the spare truck "couldn't by law carry" the required weight needed to complete the job. *Id*. Plaintiff claims that Dennis failed to tell her that the spare truck was unavailable because it was assigned to a different driver. *See id*. Plaintiff asserts that after she was

6

terminated, her assigned truck was then turned into a spare truck because Dennis "deemed [it] inadequate to collect waste." *Id.*

On or about January 12, 2022, an incident occurred at a job site in which "a wall had been knocked over by a dumpster when the driver was no longer attached to the can." Dkt. No. 1 at 10. Plaintiff claims that she attempted to discuss the incident with Dennis on January 13, 2022, but Dennis refused because it was 3:30 A.M. *See id.* Plaintiff alleges "that regardless of what took place[,]" Dennis "already had the write up" and was charging her "a preventable accident." *Id.* Plaintiff claims that "she informed dispatch of the condition of the wall on 10/16/2021" but Dennis ignored her concerns "and any other concerns placed by other drivers of this specific location." *Id.*

On January 15, 2022,[8] Dennis made a false statement by claiming that he instructed plaintiff to see him on January 12, 2022, and that plaintiff failed to appear. *See* Dkt. No. 1 at 10. Plaintiff alleges that Dennis and Glass falsified a written reprimand regarding the January 10, 2022, incident. *See id.* at 11. Plaintiff alleges that she has a video recording from January 14, 2022, of a conversation between Dennis, Glass, and herself, documenting Dennis' ultimatum and her refusal to sign the write-up Dennis presented. *See id.* at 11.

On April 30, 2018, plaintiff was injured "while trying to perform her duties of [s]wapping out loaded cans onto a lift gate of a box truck." Dkt. No. 1 at 3. Plaintiff alleges that Dennis refused to provide her the proper equipment and the "lift gate was not adequate for the job." *See id.* Plaintiff suffered a right shoulder injury. *See id.*

---

[8] Plaintiff's complaint lists this date as April 15, 2022, but it appears that this is a scrivener's error and she intended to write January 15, 2022, given the context of the other dates listed in her complaint and her claim that Waste Management terminated plaintiff's employment on January 18, 2022. *See* Dkt. No. 1 at 9-11; Dkt. No. 1-2 at 5.

Additionally, plaintiff asserts that in the two-and-one-half years before her termination from Waste Management, five male employees were promoted to the position of commercial waste driver despite their being less experienced, less qualified, and/or having a history of accidents. *See* Dkt. No. 1 at 8. Plaintiff claims that Dennis concealed from her a job opening for a position as a "commercial waste driver" until five less experienced male employees "obtained the necessary licensing and training to be promoted to a [c]ommerical [w]aste [d]river." *Id.* Plaintiff claims that Dennis assisted these individuals to obtain the proper licensing and training, and, in at least one case, encouraged the male employee to apply for the position. *See id.*

Plaintiff seeks $1,000,000 in damages, consisting of $143,000 for three years of lost wages, $143,000 for three years of lost potential income attributable to not being promoted due to discrimination and retaliation, $600 for emotional distress and reputational harm, $200,000 in punitive damages, and $14,000 for legal fees. *See* Dkt. No. 1-3 at 1, Dkt. No. 1 at 5.

### B. **Analysis**[9]

Plaintiff seeks to bring this action pursuant to Title VII of the Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e-2 et seq., claiming that she was discriminated against based on her sex.[10] *See* Dkt. No. 1 at 2. *See generally* Dkt. No. 1; *see also*

---

[9] Plaintiff's civil cover sheet checks the box indicating "U.S. Government" as the basis of jurisdiction. *See* Dkt. No. 1-3. However, the United States Government is not a defendant in this action. *See generally* Dkt. No. 1. Reading plaintiff's complaint liberally, and affording her due solicitude, it appears plaintiff likely intended to mean that her claims involve federal question jurisdiction. *See generally Cinotti v. Adelman*, 709 F. App'x 39, 40 (2d Cir. 2017) (summary order) ("[A]lthough [the plaintiff's] pro se complaint does not refer to 42 U.S.C. § 1983, the district court should have construed it liberally as asserting § 1983 claims, which provide a basis for federal question jurisdiction.").

[10] Plaintiff's civil cover sheet also checks the box for "Class Action." Dkt. No. 1-3 at 1. However, plaintiff has not named or indicated that there are any other plaintiffs in this action other than herself. *See generally* Dkt. No. 1. It is possible that plaintiff means that she is a member of a protected class as is required for her Title VII claim. *See* 42 U.S.C. § 2000e-2(a). Regardless, as a pro se plaintiff, she cannot represent

*Triestman*, 470 F.3d at 475 ("This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  Reading plaintiff's complaint liberally and affording her due solicitude, plaintiff asserts several theories of discrimination, including (1) sex discrimination, generally; (2) disparate treatment; and (3) retaliation.  *See id*. at 2-4.  Plaintiff also alleges state law claims for defamation and for breach of contract.  *See id*.

### 1.  **Title VII Claims**

"Under Title VII, '[i]t shall be an unlawful employment practice for an employer [] to . . . discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]'" *Phipps v. N. Rivers*, No. 1:21-CV-1036 (BKS/CFH), 2022 WL 909095, at *5 (N.D.N.Y. Mar. 29, 2022), *report and recommendation adopted*, No. 1:21-CV-1036 (BKS/CFH), 2022 WL 2666908 (N.D.N.Y. July 11, 2022) (quoting 42 U.S.C. § 2000e-2(a)(1)); *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998).

> In *Vega v. Hempstead Union Free School District*, 801 F.3d 72 (2d Cir. 2015), the Second Circuit refined the pleading standards applicable in a Title VII employment discrimination case. Vega held that in order to survive a motion to dismiss, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision."

---

any other plaintiffs in any form, including as a class representative.  *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998).

*Dass v. City Univ. of New York*, No. 18-CV-11325 (VSB), 2020 WL 1922689, at *3 (S.D.N.Y. Apr. 21, 2020) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)).

At the motion to dismiss stage, which employes the same standard of review as review pursuant to Section 1915,

> A plaintiff "is not required to plead a prima facie case under McDonnell Douglas . . . to defeat a motion to dismiss." *Vega*, 801 F.3d at 84; *see also Forkin v. Local 804 Union (IBT)*, 394 F. Supp. 3d 287, 307 (E.D.N.Y. 2019) ("At the pleading stage, . . . a plaintiff need not prove discrimination or even allege facts establishing every element of the *McDonnell Douglas* prima facie case."). Instead, "[t]he facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Littlejohn*, 795 F.3d at 311. For employment discrimination claims under Title VII or the NYSHRL, a plaintiff must "plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 87. A plaintiff may do this by "alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Id. In short, the complaint must plead facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.

*Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020).

### a. Sex Discrimination: Termination

### i. Waste Management, Inc.

Plaintiff has sufficiently alleged that she suffered an adverse employment action. *See* Dkt. No. 1 at 8-10; Dkt. No. 1-2 at 5; *Robinson v. Dibble*, 613 F. App'x 9, 12 (2d Cir. 2015) (summary order) (noting that the plaintiff's termination constituted "adverse employment action"); *Feingold*, 366 F.3d at 152 (explaining that an "[e]xample[ ] of materially adverse employment action [is] termination of employment."). However, plaintiff has not demonstrated that her sex or sex discrimination was a motivating factor

in her termination.  *See* Dkt. No. 1 at 8-10; Dkt. No. 1-2 at 5; *Farmer*, 473 F. Supp. 3d at 324; *Pitter v. Target Corp.*, No. 1:20-CV-183 (MAD/CFH), 2020 WL 8474858, at *5 (N.D.N.Y. Sept. 1, 2020), *report and recommendation adopted,* No. 1:20-CV-183 (MAD/CFH), 2020 WL 7767629 (N.D.N.Y. Dec. 30, 2020) (citing *Jones v. Target Corp.*, No. 15-CV-4672 (MKB), 2016 WL 50779, at *3 (E.D.N.Y. Jan. 4, 2016) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015))) ("In the absence of direct evidence of the decision maker['s] discriminatory intent, courts focus on whether a plaintiff's allegations support a 'plausible inference of discrimination.'").

> An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in . . . degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

*Pitter*, 2020 WL 8474858, at *6 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)) (internal quotation marks and citation omitted).

Here, "plaintiff has not alleged any facts from which the Court can plausibly infer that her termination was due to her sex or gender."  *Pitter*, 2020 WL 8474858, at *6; *see generally* Dkt. No. 1.  "Plaintiff's complaint does not state any allegations regarding criticism of her performance in degrading terms" or "invidious comments about other women."  *Id*.  Rather, in its current form, plaintiff's complaint appears to suggest that her termination was a result of a series of events involving the filing of a safety complaint, culminating in a dispute with her supervisors and her refusal to sign written disciplinary reprimands.  *See* Dkt. No. 1 at 9-11.  Therefore, even after reviewing plaintiff's complaint liberally and affording her due solicitude, plaintiff's complaint, as presently plead, fails to plausibly allege that her termination was the result of "sex- or gender-based discrimination

pursuant to Title VII or the NYSHRL." *Pitter*, 2020 WL 8474858, at \*6. Accordingly, it is recommended that plaintiff's Title VII sex discrimination claim against Waste Management relating to her alleged unlawful termination "be dismissed without prejudice and with opportunity to amend in light of plaintiff's *pro se* status." *Id*.

### ii.  Claims Against Individual Defendants

"To the extent that plaintiff asserts her Title VII claims against the individual defendants, such claims must be dismissed because 'individuals are not subject to liability under Title VII.'" *Pitter*, 2020 WL 8474858, at \*5 (quoting *Patterson v. Cty. of Oneida, New York*, 375 F.3d 206, 221 (2d Cir. 2004) (internal quotation marks and citation omitted); *see Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (citation omitted) ("[T]he district court's dismissal of [the] plaintiff's Title VII claims against [the defendant] in his personal capacity must be affirmed because under Title VII individual supervisors are not subject to liability."); *Phipps*, 2022 WL 909095, at \*5 (quoting *Bottge v. Suburban Propane*, 77 F. Supp. 2d 310, 313 (N.D.N.Y. 1999) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995))) ("It is well-established that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII.") (internal quotation marks omitted); *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam) ("[I]ndividuals are not subject to liability under Title VII.").

Accordingly, it is recommended that plaintiff's Title VII claims, insofar as asserted against Dennis, Glass, Bender, and Mazzelli, be dismissed with prejudice and without leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim. *See Terpening v. McGinty*, No. 1:21-CV-1215 (GTS/CFH), 2022 WL 2657291, at \*7 (N.D.N.Y. Apr. 28, 2022), *report and recommendation adopted,* No. 1:21-CV-1215

(GTS/CFH), 2022 WL 2115265 (N.D.N.Y. June 13, 2022) (quoting *Golden v. Syracuse Reg'l Airport Auth.*, No. 5:20-CV-1566 (MAD/TWD), 2021 WL 485731, at *1 (N.D.N.Y. Feb. 10, 2021) (quoting *Patterson,* 375 F.3d at 221)) ("A plaintiff's 'Title VII claims against [ ] individual [d]efendants must be dismissed with prejudice . . . because 'individuals are not subject to liability under Title VII.'").

> However, individual liability may lie under New York State Human Rights Law, where the individual actually participates in conduct giving rise to discrimination, and due to the "special solicitude" due to *pro se* litigants, the Court will assess plaintiff's claims as if they were brought under the New York State Human Rights Law ("NYSHRL"), pursuant to this Court's supplemental jurisdiction.

*Zheng v. Gen. Elec. Co.*, No. 1:15-CV-1232 (TJM/CFH), 2015 WL 7421961, at *2 (N.D.N.Y. Oct. 26, 2015), *report and recommendation adopted,* No. 1:15-CV-1232 (TJM/CFH), 2015 WL 7430046 (N.D.N.Y. Nov. 20, 2015) (citing *DiPetto v. U.S. Postal Serv.,* 383 F. App'x 102, 103 (2d Cir. 2010) (summary order) (citation omitted) ("[W]hile pro se complaints must contain sufficient factual allegations to meet the plausibility standard, we should look for such allegations by reading pro se complaints with 'special solicitude' and interpreting them to raise the 'strongest [claims] that they suggest.'")); *see also Kercado-Clymer v. City of Amsterdam,* 370 F. App'x 238, 242 n.1 (2d Cir. 2010) (summary order) (additional citations omitted) (noting that the District Court properly dismissed the plaintiff's Title VII claims against his supervisor "in his individual capacity because under Title VII individual supervisors are not subject to liability" but concluding that liability "may lie under the [NYHRL] where, as here, the individual actually participates in the conduct giving rise to the discrimination claim.").

"Under the NYSHRL, individual liability attaches where an employee is shown to have an ownership interest or any power to do more than carry out personnel decisions

made by others . . . essentially . . . the authority 'to hire or fire people." *Zheng*, 2015 WL 7421961, at *3 (quoting *Pellegrini v. Sovereign Hotels, Inc.*, 740 F.Supp.2d 344, 355 (quoting *Tomka*, 66 F.3d at 1317), *abrog. on other grounds, Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)) (internal quotation marks omitted).

"In order to determine whether this Court should allow plaintiff an opportunity to amend [her] complaint to see if [s]he can state a cause of action pursuant to the NYSHRL against any or all of the individual defendants, it also must be determined whether, even if granted leave to amend, plaintiff would be able to state a claim." *Zheng*, 2015 WL 7421961, at *3. Here it is unclear whether Dennis, Glass, Bender, or Mazzelli "had the ability to hire or fire employees." *Id.* "Thus, even if plaintiff could otherwise make a claim under the NYSHRL, [s]he has not provided sufficient information for the Court to determine whether such claims properly lie against the individual defendants." *Id.* Therefore, it is recommended that plaintiff "be granted an opportunity to amend h[er] complaint to raise claims for individual liability under the NYSHRL to the extent [s]he may be able to establish that any of the individual defendants alleged to have engaged in prohibited . . . discriminatory conduct also had the authority to independently hire or fire."[11] *Id.*

Assuming, *arguendo*, that Dennis, Glass, Bender, and/or Mazzelli had the ability to hire and fire employees, the undersigned will next address whether plaintiff's complaint,

---

[11] "In making this recommendation, the undersigned offers no opinion whether plaintiff may be able to successfully plead such claims or that such claims could withstand a motion to dismiss or summary judgment." *Zheng*, 2015 WL 7421961, at *3, n.6.

as pleaded, could raise a claim for gender discrimination under the NYSHRL.  *See Zheng*, 2015 WL 7421961, at \*2-3.

Historically, in order to plead, at the motion to dismiss stage, an "employment discrimination claim[] under Title VII . . . or the NYSHRL, a plaintiff must 'plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.'"  *Farmer*, 473 F. Supp. 3d at 324 (quoting *Vega*, 801 F.3d at 87).  "A plaintiff may do this by 'alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.'"  *Id.* (quoting *Vega*, 801 F.3d at 87).  "In short, the complaint must plead facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'"  *Id.* (quoting *Littlejohn*, 795 F.3d at 311).

"However, [t]he New York State Legislature passed several amendments to the NYSHRL in June 2019, the effect of which is to render the standard for claims closer to the standard of the [New York City Human Rights Law ("NYCHRL")]."  *Herrera v. Syracuse Univ.*, No. 5:24-CV-245 (AMN/ML), 2025 WL 874734, at \*15 (N.D.N.Y. Mar. 20, 2025) (quoting *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021)).

> New York courts have not definitively resolved the question of how this amendment changes standards of liability under the NYSHRL, but the Second Circuit has noted that the New York Court of Appeals has constru[ed] the NYSHRL and NYCHRL claims together in [a]pplying the mandate to interpret these laws broadly, and lower courts have treated NYSHRL and NYCHRL claims as coextensive.

*Ricciardo v. NYU Hosps. Ctr.*, No. 22-CV-4952 (MKB), 2025 WL 2208371, at \*25 (E.D.N.Y. Aug. 4, 2025) (first quoting *Cooper v. Franklin Templeton Invs.*, No. 22-2763-CV, 2023 WL 3882977, at \*3 (2d Cir. June 8, 2023), then quoting *Edelman v. NYU Langone Health*

*Sys.*, 141 F.4th 28, 45, n.9 (2d Cir. 2025), then quoting *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 452 (N.Y. 2024) (internal citations and quotation marks omitted); *Herrera*, 2025 WL 874734, at *15 (citing *e.g.*, *Syeed*, 41 N.Y.3d at 452 and *Alshami v. City Univ. of N.Y.*, 203 A.D.3d 592, 592 n.1 (1st Dept. 2022)) ("While Second Circuit courts are currently split over the extent to which NYSHRL standards should be equated with NYCHRL standards, New York state courts have recently treated the two as coextensive.").

"Discrimination claims brought under NYCHRL 'are to be reviewed more liberally than Title VII claims, and the provisions of [NYCHRL] must be construed broadly in favor of plaintiffs alleging discrimination.'" *Herrera*, 2025 WL 874734, at *15 (quoting *Levy v. Legal Aid Soc.*, 408 F. Supp. 3d 209, 217 (E.D.N.Y. 2019) (citing *Johnson v. Andy Frain Svcs., Inc.*, 638 F. App'x. 68, 71 (2d Cir. 2016) (summary order))). "Unlike Title VII, NYCHRL does not require a plaintiff alleging discrimination to prove an adverse employment action." *Id.* (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013)). "Rather, the plaintiff need only show differential treatment – that she is treated less well – because of a discriminatory intent." *Id.* (quoting *Mihalik*, 715 F.3d at 110 (citing *Williams v. N.Y.C. Hous. Auth.*, 61 A.D. 3d 62, 77 (1st Dept. 2009)) (internal quotation marks omitted). "Indeed, the challenged conduct need not even be tangible (like hiring or firing)." *Mihalik*, 715 F.3d at 110 (citing *Williams,* 61 A.D. 3d at 79). "Even under this more liberal standard, however, plaintiffs must still allege facts that give rise to 'a minimal inference of discriminatory motivation.'" *Herrera*, 2025 WL 874734, at *15 (quoting *Cruz v. Local 32BJ*, No. 22-Civ-3068, 2024 WL 4357036, at *19 (S.D.N.Y. Sept. 30, 2024) (quoting *Littlejohn*, 795 F.3d at 311)); *see also Ward v. Cohen Media Publ'ns LLC*, No. 22-CV-6431, 2023 WL 5353342, at *15 (S.D.N.Y. Aug. 21, 2023) ("[E]ven under

the more lenient requirements of the NYCHRL, [a] plaintiff's claims must be more than conclusory or speculative to survive a motion to dismiss.") (citation omitted). "Allegations that a plaintiff subjectively believes that her employer was engaged in discrimination are 'legally irrelevant' and cannot serve as a basis to state a claim upon which relief could be granted." *Mihalik*, 715 F.3d at 110 (citing *Farmer*, 473 F. Supp. 3d at 328); *see also Lugo v. City of New York*, 518 F. Appx. 28, 30 (2d Cir. 2013) (summary order) ("While the NYCHRL is indeed reviewed independently from and more liberally than federal [ ] discrimination claims . . . it still requires a showing of some evidence from which discrimination can be inferred." (internal quotation marks and citation omitted)).

As plaintiff's claims accrued after the June 2019 amendments, and courts within the Second Circuit "have treated NYSHRL and NYCHRL claims as coextensive," the undersigned will analyze plaintiff's claims under both standards. *Ricciardo*, 2025 WL 2208371, at *25. Here, under the more liberal standard of review, plaintiff has demonstrated differential treatment because she was fired. *See* Dkt. No. 1 at 9-11. Under the original NYSHRL standard, plaintiff's termination also amounts to an adverse action. However, plaintiff's complaint does not "giv[e] rise to a plausible inference of discrimination" or provide "minimal support for the proposition that the employer was motivated by discriminatory intent." *Farmer*, 473 F. Supp. 3d at 324 (first quoting *Vega*, 801 F.3d at 87, then quoting *Littlejohn*, 795 F.3d at 311); *Herrera*, 2025 WL 874734, at *15. Plaintiff's complaint does not suggest that her sex was "a motivating factor in the employment decision." *Id*. Rather plaintiff's complaint, in its current form, suggests that her termination was due to reasons other than gender discrimination, i.e. a dispute with her supervisors. *See* Dkt. No. 1 at 9-11.

Therefore, undersigned concludes that, even liberally read, plaintiff's complaint has not sufficiently alleged gender discrimination under the NYSHRL, whether the original standard or NYCHRL standard is applied. *See Farmer*, 473 F. Supp. 3d at 324; *Herrera*, 2025 WL 874734, at *15. The undersigned recommends that plaintiff be given an opportunity to amend should she wish to raise a claim for gender discrimination claim under the NYSHRL against Dennis, Glass, Bender, and Mazzelli.

b. **Disparate Treatment**

"To state a claim for disparate treatment under Title VII, 'a plaintiff must plausibly allege that (1) the employer took adverse action against [her], and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision.'" *Krul v. Brennan*, 501 F. Supp. 3d 87, 96 (N.D.N.Y. 2020) (quoting *Vega*, 801 F.3d at 87). As to the first element, "[a] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Id*. (quoting *Morris v. New York State Police*, 268 F. Supp. 3d 342, 363 (N.D.N.Y. 2017) (citation omitted). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Morris*, 268 F. Supp. 3d at 363 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)) (internal quotation marks omitted).

> While there is no exhaustive list of what constitutes an adverse employment action, courts have held that the following actions, among others, may qualify: discharge or demotion; denial of a provisional or permanent promotions; involuntary transfer that entails objectively inferior working conditions; denial of benefits; denial of a requested employment accommodation; denial of training that may lead to promotional opportunities; and a shift assignment that makes a normal life difficult for the employee."

*Sotak v. Bertoni*, 501 F. Supp. 3d 59, 79 (N.D.N.Y. 2020) (quoting *Little v. National Broad. Co., Inc.*, 210 F. Supp. 2d 330, 377 (S.D.N.Y. 2002)); *Morris*, 268 F. Supp. 3d at 363 (quoting *Vega*, 801 F.3d at 85) ("Examples of materially adverse changes including termination of employment, a demotion evidence[d] by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.").

"As to the second element, an action is 'because of' a plaintiff's race, color, religion, sex, or national origin where it was a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action." *Krul*, 501 F. Supp. 3d at 96 (quoting *Vega*, 801 F.3d at 85) (citation omitted). In other words, "a plaintiff in a Title VII case need not allege 'but-for' causation." *Id.* (quoting *Vega*, 801 F.3d at 86).

Plaintiff's complaint alleges that her similarly-situated male coworkers were afforded favorable treatment and working conditions, she was denied "training that may lead to promotional opportunities," and she was denied career advancement opportunities. *Sotak* , 501 F. Supp. 3d at 79; *see* Dkt. No. 1 at 8-10. More specifically, plaintiff claims that Dennis concealed job openings for a position of "commercial waste driver" from her and she was forced to drive an unsafe truck. *See id*. at 8, 10. Conversely, plaintiff claims alleges that at least three male coworkers were provided the training necessary to obtain the experience and licensures to be promoted to a commercial waste driver position. *See id*. at 8. Plaintiff states that in the two-and-one-half years prior to her termination, four male coworkers were promoted to commercial waste driver and at least one male coworker had a route created for him. *See id*.

"At the pleadings stage, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination . . .  Plaintiff has done so here." *Krul*, 501 F. Supp. 3d at 98 (quoting *Vega*, 801 F.3d at 87 (citing *Littlejohn*, 795 F.3d at 310)) (internal quotation marks omitted).  Therefore, the undersigned recommends that plaintiff's Title VII disparate treatment claim against Waste Management be permitted to proceed.[12]

### c.  **Retaliation**

Reading plaintiff's complaint liberally, and affording her due solicitude, she raises a Title VII claim for retaliation against Waste Management.  *See* Dkt. No. 9-11.  To state a prima facie Title VII retaliation claim "the plaintiff must plausibl[y] allege that: (1) defendants discriminated—or took an adverse employment action—against [her]; (2) 'because' [she] has opposed any unlawful employment practice."  *Krul*, 501 F. Supp. 3d at 99 (quoting *Vega*, 801 F.3d at 90).  "In the context of a retaliation claim, an adverse employment action is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Id*. (quoting *Vega*, 801 F.3d at 90) (internal quotation marks and additional citation omitted)).  "This definition covers a [broader range] of conduct than does the adverse-action standard for claims of discrimination under Title VII: '[T]he antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'  *Id.* (quoting *Vega*, 801 F.3d at 90).

---

[12] The undersigned makes no conclusion as to whether such claim could survive a properly filed and supported dispositive motion.

In evaluating Title VII retaliation claims,

"Context matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination."

*Krul*, 501 F. Supp. 3d at 99-100 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006)).

"As for causation, a plaintiff must plausibly plead a connection between the act and [her] engagement in protected activity." *Krul*, 501 F. Supp. 3d at 100 (quoting *Vega*, 801 F.3d at 90 (citing 42 U.S.C. § 2000e-3(a))). "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Id*. (quoting *Vega*, 801 F.3d at 90). "Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id*. (quoting *Vega*, 801 F.3d at 90); *see also Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation[.]").

"As relevant here a plaintiff engages in protected activity when she (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Jacobs v. Hudson Valley Fam. Physicians, PLLC*, 725 F. Supp. 3d 235, 247 (N.D.N.Y. 2024)

(quoting *Davis v. NYS Dept. of Corr. Attica Corr. Facility*, 110 F.Supp.3d 458, 462 (W.D.N.Y. 2015) (quoting *Bundschuh v. Inn on the Lake Hudson Hotels, LLC*, 914 F. Supp. 2d 395, 405 (W.D.N.Y. 2012))) (internal quotation marks omitted); *Stathatos v. Gala Res., LLC*, No. 06 CIV. 13138 RLC, 2010 WL 2024967, at *12 (S.D.N.Y. May 21, 2010) (citing 42 U.S.C. § 2000e-3(a)) ("Protected activity is that which opposes unlawful employment practices under Title VII."); *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 101 (S.D.N.Y. 2023) (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (*per curiam*)) ("An employee's complaint qualifies as protected activity so long as the employee has a good faith, reasonable belief (assessed in light of the totality of the circumstances) that the employee was 'opposing an employment practice made unlawful by Title VII.'").

"Protected activities can also include informal protests of discriminatory employment practices, including making complaints to management provided that they are sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII." *Jacobs*, 725 F. Supp. 3d at 247 (quoting *Arkorful v. N.Y.C. Dept. of Educ.*, 712 F. Supp. 3d 336, 356, (E.D.N.Y. Jan. 24, 2024) (quoting *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012))) (internal quotation marks omitted); *Risco*, 868 F. Supp. 2d at 110 ("[C]omplaints must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII.  Generalized complaints about a supervisor's treatment are insufficient.").

Here, plaintiff alleges that she complained to Mazzelli that her work truck would not start, failed a mandatory pre-trip safety inspection, and was unsafe to drive.  *See* Dkt. No. 9-10.  Plaintiff also claims that Dennis instructed her to drive the unsafe truck in

violation of New York State DOT rules or "go home." *Id*. at 10.  Plaintiff asserts that Dennis issued her a written reprimand for her refusal to drive the unsafe truck and terminated her employment when she refused to sign the written reprimand.  *See id*. at 10-11.  However, plaintiff has failed to connect the alleged retaliatory reprimand and employment termination to a protected Title VII activity.  *See Jacobs*, 725 F. Supp. 3d at 247.  Plaintiff has alleged retaliation generally but has not linked Waste Management's retaliation to (1) her opposition to an employment practice prohibited by Title VII; (2) her claim of sex discrimination; or (3) an informal protest of discriminatory employment practices.  *See id*.  It is unclear how plaintiff's safety complaints are protected by Title VII.  *See id*.  Thus, the undersigned concludes that plaintiff's complaint, in its current form, has not sufficiently pled Title VII retaliation.  *See Krul*, 501 F. Supp. 3d at 99 (quoting *Vega*, 801 F.3d at 90).  Therefore, the undersigned recommends that plaintiff's Title VII retaliation claim be dismissed without prejudice and with leave to amend.

## 2. **New York State Law Claims**

Plaintiff lists defamation and breach of contract as her second and third causes of action.  *See* Dkt. No. 1 at 4.  Claims for defamation and breach of contract arise under New York State law.  *See OnActuate Consulting Inc. v. Aeon Nexus Corp.*, No. 1:20-CV-508 (LEK/CFH, 2022 WL 866418, at *7 (N.D.N.Y. Mar. 23, 2022); *Zheng*, 2015 WL 7421961, at *3 ("A claim for defamation against non-governmental employees arises under New York State common law.").  As such, the undersigned evaluates whether the Court should exercise supplemental jurisdiction to hear plaintiff's state law claims.

"Under 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action

as to form part of the same case or controversy under Article III of the United States Constitution." *Milner-Koonce v. Albany City Sch. Dist.*, No. 1:21-CV-1271 (LEK/CFH), 2022 WL 1500995, at *10 (N.D.N.Y. May 12, 2022), *report and recommendation adopted as modified,* No. 1:21-CV-1271 (LEK/CFH), 2022 WL 2339443 (N.D.N.Y. June 29, 2022) (quoting *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)) (internal quotation marks omitted). "A state law claim forms part of the same controversy if it and the federal claim 'derive from a common nucleus of operative fact.'" *Id*. (quoting *Briarpatch Ltd., L.P*, 373 F.3d at 308 (quoting *Cicio v. Does*, 321 F.3d 83, 97 (2d Cir. 2003) vacated on other grounds *Vytra Healthcare v. Cicio*, 542 U.S. 933 (2004))) (additional citation omitted). "This is so even if the state law claim is asserted against a party different from the one named in the federal claim." *Id*. (quoting *Briarpatch Ltd., L.P*, 373 F.3d at 308 (first citing 28 U.S.C. § 1367(a) (2000), then citing *Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir. 2000))). "Claims derive from a common nucleus of operative fact where 'the facts underlying the federal and state claims substantially overlapped or the federal claims necessarily brought the facts underlying the state claim before the court.'" *Id*. (quoting *Kriss v. Bayrock Grp., LLC*, 10 CIV. 3959 (LGS/DCF), 2017 WL 4023351, at *2 (S.D.N.Y. Sept. 12, 2017) (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006))). "To form part of the same case or controversy, the claims must 'arise out of the same series of events.'" *Id*. (quoting *Thompson v. Urb. Recovery House, LLC*, No. 20 CIV 9581 (PGG/JLC), 2022 WL 589957, at *7 (S.D.N.Y. Feb. 28, 2022), *report and recommendation adopted sub nom. Thompson v. Elev8 Ctr. New York, LLC*, No. 20 CIV 9581 (PGG), 2022 WL 4547411 (S.D.N.Y. Sept. 29, 2022).

Here, it appears that plaintiff's defamation and breach of contract claims arise out of the same "nucleus of operative fact" as her Title VII claims. *See* Dkt. No. 1 at 9-11. Plaintiff appears to assert that Dennis and Glass defamed her by "making false statements about what happened" during a meeting in which she refused to sign Dennis' written reprimands. *See id*. at 10-11. In turn, plaintiff claims that Waste Management breached her employment contract when it terminated her employment for refusing to sign the written reprimands. *See id*. at 4, 10-11. "As the federal claims bring the facts underlying the state claim before the Court, the undersigned will turn to the merits of the state law claims to determine if plaintiff has sufficiently stated a claim for relief." *Milner-Koonce*, 2022 WL 1500995, at *10 (citing *Kriss*, 2017 WL 4023351, at *2).

a. **Defamation**

"Under New York law, '[d]efamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander.'" *Phipps*, 2022 WL 909095, at *7 (quoting *Kennedy v. City of New York*, No. 12 CIV. 4166 (KPF), 2015 WL 6442237, at *12 (S.D.N.Y. Oct. 23, 2015) (quoting *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 517 (S.D.N.Y. 2013))). "Under New York law, slander is defined as "(1) a defamatory statement of fact, (2) that is false, (3) published to a third party, (4) of and concerning the plaintiff, (5) made with the applicable level of fault on the part of the speaker, (6) either causing special harm or constituting slander per se, and (7) not protected by privilege." *Id*. (quoting *O'Diah v. Yogo Oasis*, 954 F. Supp. 2d 261, 275 (S.D.N.Y. 2013) (quoting *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001))) (internal quotation marks omitted). Further, "truth is an absolute defense to an action based on defamation." *Id*. (quoting

*Fine v. ESPN, Inc.*, 11 F. Supp.3d 209, 224 (N.D.N.Y. Mar. 31, 2014)) (additional citation omitted).

Under New York State law, defamation claims are subject to a one-year statute of limitations. *See* N.Y. C.P.L.R. § 215(3). Under New York law, "[n]o court shall extend the time limited by law for the commencement of an action." N.Y. C.P.L.R. § 201. "Claims for slander generally accrue[ ] on the date of the first publication." *Phipps*, 2022 WL 909095, at *8 (quoting *Rissetto v. County of Clinton*, 8:15-CV-720 (GTS/CFH), 2016 WL 4530473, at *33, n.105 (quoting *Hoesten v. Best*, 34 A.D. 3d 143, 150 (N.Y. App. Div. 2006)), *accord. Karam v. First Am. Bank of New York*, 190 A.D.2d 1017, 1018 (N.Y. App. Div. 4th Dept. 1993) ("In an action for slander, the Statute of Limitations runs from the time of the utterance, not the discovery of the slanderous matter.")).

Here, plaintiff alleges that she was slandered on either January 10, 2022, January 14, 2022, or April 15, 2022. *See* Dkt. No. 1 at 10-11. For purposes of this review only, the undersigned will assume that plaintiff was slandered on April 15, 2022, as that date is most favorable to plaintiff. Thus, plaintiff had until April 15, 2023, to file a defamation claim. *See* N.Y. C.P.L.R. § 215(3); *Phipps*, 2022 WL 909095, at *8. As plaintiff commenced this action on December 10, 2024, she brought her action after the one-year statute of limitations has expired, making her defamation claim barred by the statute of limitations. *See* N.Y. C.P.L.R. § 215(3).

Here, plaintiff does not argue equitable tolling nor does she "articulate any acts by defendants that prevented [her] from timely commencing suit" with respect to her defamation claim. *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir 2007) (brackets omitted). However, if given an opportunity to amend, plaintiff may arguably allege that equitable

tolling applies to this matter if she were prevented from filing her defamation claim within the one-year statute of limitations.   "Equitable tolling of the statute of limitations is applicable in certain situations where the Court determines that a plaintiff should, in fairness, be excused from his or her lateness in filing a complaint." *Sides v. Paolano*, No. 9:15-CV-1203 (MAD/CFH), 2020 WL 6530751, at *4 (N.D.N.Y. June 3, 2020), *report and recommendation adopted,* No. 9:15-CV-1203 (MAD/CFH), 2020 WL 5511414 (N.D.N.Y. Sept. 14, 2020), aff'd, No. 20-3241, 2021 WL 4256864 (2d Cir. Sept. 20, 2021) (citing *Gonzalez v. Hasty*, 651 F.3d 318, 323-24 (2d Cir. 2011)).   "Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Id*. (quoting *Gonzalez*, 651 F.3d at 322) (quoting *Veltri v. Bldg. Serv. 32-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004))); *Zirvi v. Flatley*, 838 F. App'x 582, 587 (2d Cir. 2020) (same); *New York State Marine Highway Transportation, LLC v. New York State Dep't of Transportation*, 459 F. Supp. 3d 470, 477 (N.D.N.Y. 2020) (same).   "The plaintiff bears the burden of showing that he or she is entitled to equitable tolling." *Id*. (citing *Abbas*, 480 F.3d at 642).[13]  Accordingly, the undersigned concludes that plaintiff's defamation claim must be dismissed as barred by the statute of limitations.  However, out of an abundance of caution, the undersigned recommends dismissing plaintiff's defamation claims against Dennis and Glass without prejudice and with leave to renew because it is possible that plaintiff could plead that she is entitled to equitable tolling.[14] *See* N.Y. C.P.L.R. §§ 215(3), 201; *Sides*, 2020 WL 6530751, at *4.

---

[13] "Neither a mistake of law nor pro se status is sufficient for equitable tolling."  *DiBenedetto v. Coley*, No. 24-1029-CV, 2024 WL 4662979, at *2 (2d Cir. Nov. 4, 2024) (citing *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257 (2016) and *Smith v. McGinnis*, 208 F.3d 13, 18 (2d Cir. 2000)).

[14] The undersigned makes no finding as to whether plaintiff could successfully plead equitable tolling.

b. **Breach of Contract**

"A cause of action alleging breach of contract is governed by a six-year statute of limitations and accrues at the time of the alleged breach."  *CDx Lab'ys, Inc. v. Zila, Inc.*, 80 N.Y.S.3d 382, 383 (App. Div. 2018) (first citing CPLR § 213(2), then citing *Hahn Automotive Warehouse, Inc. v. American Zurich Ins. Co.,* 18 N.Y.3d 765, 770) (2012)). "Breach of contract under New York law requires a party to allege (1) the existence of an agreement, (2) adequate performance of the contract by the [claimant], (3) breach of contract by the [opposing party], and (4) damages." *OnActuate Consulting Inc.*, 2022 WL 866418, at *7 (quoting *Red Fort Cap., Inc. v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 478 (S.D.N.Y. 2019)).  "In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue."  *Syracuse v. Loomis Armored US, LLC*, No. 5:11-CV-744 (MAD), 2012 WL 88332, at *4 (N.D.N.Y. Jan. 11, 2012) (quoting *Wolff v. Rare Medium, Inc.,* 171 F. Supp.2d 354, 358 (S.D.N.Y. 2001)).

"In order to adequately allege the existence of an agreement, a plaintiff must plead the provisions of the contract upon which the claim is based." *Syracuse*, 2012 WL 88332, at *4 (quoting *Howell v. American Airlines, Inc.,* No. 5-CV-3628, 2006 WL 3681144, *3 (E.D.N.Y. Dec. 11, 2006) (internal quotation marks and additional citation omitted)).  "A plaintiff need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim." *Id.* (quoting *Howell*, 2006 WL 3681144, *3 (additional citations omitted)).  "However, the complaint must at least set forth the terms of the agreement upon which liability is predicated . . . by express reference."  *Id.* (quoting *Howell*, 2006 WL 3681144, *3) (internal quotation marks and additional quotations omitted).

Plaintiff's complaint states, "Mary-Rose F. Calenzo signed the agreed upon terms on 3/5/2018." Dkt. No. 1 at 9. Plaintiff claims that Dennis breached the contract on November 2021[15] "[w]hen he made changes to the route sequencing that was in violation of company policy." *Id*. Plaintiff was terminated effective January 18, 2022. See Dkt. No. 1-2 at 5. Plaintiff alleges that she adequately performed her job duties as a truck driver pursuant to the terms of this agreement, and that Waste Management breached the contract by changing the conditions of her employment. *See id.* at 9. Read liberally and with special solicitude, it also appears that plaintiff is contending that defendants further breached the contract by terminating her employment in retaliation for her refusing to sign written reprimands falsely accusing her of safety violations and insubordination. See id. at 9-11. Plaintiff's complaint also alleges that she suffered damages resulting from the termination of her employment. *See id.* at 5.

However, plaintiff has not demonstrated the existence of a contractual agreement or set forth the terms of any said agreement that were breached. *See* Dkt. No. 9; *see also OnActuate Consulting Inc.*, 2022 WL 866418, at *7; *Syracuse*, 2012 WL 88332, at *4. Rather, plaintiff conclusorily states that "changes to the route sequencing," and, arguably, her termination of employment, breached her contract with Waste Management. *See* Dkt. No. 1 at 9-11. She has not submitted a copy of her contract nor provided the Court with sufficient details about the terms she alleges to have been breached.

Accordingly, the undersigned recommends that plaintiff's breach of contract claim be dismissed without prejudice and with leave to amend to demonstrate the existence

---

[15] New York has a six-year statute of limitations for breach-of-contract claims, and that the limitations period begins to run when the cause of action accrues. *See Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp. 2d 461, 470 (S.D.N.Y. 2010). Plaintiff's beach-of-contract claim, based on the information presently before the undersigned, appears timely.

and terms of any contract between plaintiff and Waste Management that she alleges were breached. *See OnActuate Consulting Inc.*, 2022 WL 866418, at *7 (quoting *Red Fort Cap., Inc.*, 397 F. Supp. 3d at 478).

## IV. **Leave to Amend**

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gerken v. Gordon*, No. 1:24-CV-00435 (MAD/CFH), 2024 WL 4608307, at *15 (N.D.N.Y. Oct. 29, 2024), *report and recommendation adopted,* No. 1:24-CV-435 (MAD/CFH), 2024 WL 5001402 (N.D.N.Y. Dec. 6, 2024) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation and internal quotation marks omitted)). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.'" *Id.* (citing *Edwards v. Penix*, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Here, plaintiff's Title VII sex discrimination claim against the individual defendants is barred by law and cannot be cured by a better pleading. The defamation claim against Dennis and Glass for monetary damages may be subject to equitable tolling and can possibly be cured by a better pleading. The Title VII unlawful termination and retaliation claims against Waste Management; the breach of contract claim against Waste Management; and the potential NYSHRL claim against the individual defendants may be cured by a better pleading. Accordingly, it is recommended that insofar as plaintiff seeks to proceed against (1) the individual defendants pursuant to Title VII for sex discrimination, such request be dismissed in its entirety with prejudice and without

opportunity to amend.  It is also recommended that plaintiff's claims for (1) defamation against Dennis and Glass; (2) Title VII unlawful termination and retaliation against Waste Management; (3) breach of contract against Waste Management, be dismissed in their entirety without prejudice and with opportunity to amend.[16]  It is further recommended that plaintiff's Title VII disparate treatment claim against Waste Management be permitted to proceed.[17] It is also recommended that plaintiff be afforded an opportunity to amend to raise a NYSHRL claim against Waste Management and the individual defendants should she wish to do so.

## IV. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is

**RECOMMENDED**, that insofar as plaintiff seeks to proceed against Mazzelli, Dennis, Bender, and Glass for Title VII gender discrimination (Dkt. No. 1), such claims be **DISMISSED with prejudice and without opportunity to amend**; and it is further

**RECOMMENDED**, that insofar as plaintiff seeks to proceed against Dennis and Glass for defamation (Dkt. No. 1), such claim be **DISMISSED without prejudice and with opportunity to amend** should she wish to plead equitable tolling; it is further

---

[16] In the event the District Judge adopts the undersigned's Report-Recommendation and Order and plaintiff is permitted to amend her complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading by reference. Any amended pleading supersedes and replaces a prior pleading in its entirety. An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for which leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

[17] It is recommended that such claim not be served upon defendants until after it is determined whether plaintiff will be permitted to, and will seek, to amend as to her other claims.

**RECOMMENDED**, that insofar as plaintiff may seek to proceed against Mazzelli, Dennis, Bender, and Glass under the NYSHRL for sex discrimination, plaintiff be given an opportunity to amend to raise such claim; and it is further

**RECOMMENDED**, that insofar as plaintiff may seek to proceed against Waste Management for: (1) Title VII unlawful termination and retaliation, and (2) for breach of contract, plaintiff's complaint (Dkt. No. 1) be **DISMISSED without prejudice and with leave to amend**; and it is further

**RECOMMENDED**, that plaintiff's claim for disparate treatment against Waste Management under Title VII be permitted to proceed;[18] and it is further

**RECOMMENDED**, that if, following her review of this Report-Recommendation and Order, the District Judge adopts this Report-Recommendation and Order, plaintiff be given thirty (30) days from the filing date of the District Judge's Decision and Order adopting this Report-Recommendation and Order to file an amended complaint, and if plaintiff does not timely file an amended complaint pursuant to the District Judge's Decision and Order, the Clerk may close this case without the requirement of further order of the Court; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the

---

[18] It is recommended that if the District Judge adopts this Report-Recommendation and Order in its entirety, plaintiff be given thirty (30) days from the District Judge's Order adopting the Report-Recommendation and Order to file an Amended Complaint, and if plaintiff does not so amend, the case proceed solely on the Title VII disparate treatment claim against Waste Management.

Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14)**

**DAYS WILL PRECLUDE APPELLATE REVIEW**.  *See Roldan v. Racette*, 984 F.2d 85,

89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[19]

      Dated:  August 26, 2025
               Albany, New York

                                Paul J. Evangelista
                                U.S. Magistrate Judge

---

[19] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen-day (14) period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See id.* § 6(a)(1)(c).