**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MARY-ROSE F. CALENZO,

Plaintiff,

v.

JAMES DENNIS, et al.,

Defendants.

No. 1:24-CV-1499 (AMN/PJE)

---

**APPEARANCES:**

Mary-Rose F. Calenzo
553 Coyote Circle
Midway Park, North Carolina 28544
Plaintiff pro se

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

## DECISION & ORDER

### I. Procedural History

On December 10, 2024, plaintiff commenced this action by filing a complaint and an application for leave to proceed in forma pauperis ("IFP"). *See* Dkt. Nos. 1-2. On August 26, 2025, the undersigned granted plaintiff's IFP application. *See* Dkt. No. 5. On initial review of plaintiff's original complaint, the undersigned recommended that plaintiff's (1) Title VII disparate treatment claim against Waste Management, Inc. ("Waste Management") be permitted to proceed; (2) Title VII gender discrimination claims against James Dennis ("Dennis"), route manager for commercial; Michael Glass ("Glass"), route manager for industrial; Raymond Bender ("Bender"), safety manager; and Joseph Mazzelli

("Mazzelli), district manager, be dismissed with prejudice and without opportunity to amend; (3) Title VII unlawful termination and retaliation claims against Waste Management be dismissed without prejudice and with opportunity to amend; (4) New York state law defamation claims against Dennis and Glass be dismissed as barred by the statute of limitations, but without prejudice and with opportunity to amend to the extent that plaintiff could plead she that was entitled to equitable tolling; and (5) New York State law breach of contract claim against Waste Management without prejudice and with opportunity to amend. *See generally* Dkt. No. 5. The undersigned also recommended plaintiff be afforded an opportunity to amend to raise claims under the New York State Human Rights Law ("NYSHRL") for gender discrimination against Dennis, Glass, Bender, and Mazzelli to the extent that any of these individuals had the authority to hire and fire Waste Management personnel. *See id*. On September 22, 2025, the Court adopted the August 26, 2025, Report-Recommendation & Order in its entirety. *See* Dkt. No. 6.

On October 16, 2025, plaintiff filed an amended complaint. *See* Dkt. Nos. 8-9. The undersigned reviewed plaintiff's amended complaint and recommended that plaintiff's (1) Title VII gender discrimination claims against Jess Winowski ("Winowski"), "dispatcher," and Bryan Crom ("Crom"), "employee promoted over plaintiff"; (2) NYSHRL gender discrimination claims against Glass, Bender, Mazzelli, Winowski, and Crom; and (3) New York State law defamation and breach of contract claims; each be dismissed with prejudice and without opportunity to amend. *See generally* Dkt. No. 11. The undersigned also recommended that plaintiff's (1) Title VII and the NYSHRL gender discrimination claims against Waste Management; (2) NYSHRL gender discrimination claim against Dennis; (3) Title VII and NYSHRL retaliation claims against Waste Management; (4) NYSHRL hostile

work environment claim against Waste Management; and (5) NYSHRL aiding and abetting a hostile work environment claims against Dennis and Glass, be permitted to survive Section 1915 review. *See id*. On December 22, 2025, the Court adopted the December 1, 2025, Report-Recommendation & Order in its entirety. *See* Dkt. No. 14.

On February 24, 2026, plaintiff filed a motion for leave to file a second amended complaint. *See* Dkt. No. 27. On February 27, 2026, defendant Waste Management filed a motion to dismiss plaintiff's complaint as against Waste Management only for lack of personal and specific jurisdiction. *See* Dkt. No. 31. On March 18, 2026, plaintiff filed a motion for leave to file a third amended complaint. *See* Dkt. No. 40.

On August 5, 2025, the Court (1) granted Waste Management's motion to dismiss, (2) granted plaintiff's motion for leave to file a third amended complaint in part, and (3) denied plaintiff's motion for leave to file a second amended complaint as moot. *See* Dkt. No. 54. The Court granted plaintiff's motion to the extent that plaintiff requested leave to add Waste Management of New York, L.L.C. ("WMNY") as a defendant in this action and to reassert claims under the NYSHLR for aiding and abetting a hostile work environment against Dennis and Glass, and gender discrimination against Dennis. *See id*. at 11-12, 14.

Presently before the undersigned is review of plaintiff's third amended complaint pursuant to 42 U.S.C. § 1915. *See* Dkt. No. 5 at 2 (setting forth the applicable standard of review).

## II. **Review of Plaintiff's Third Amended Complaint**

### A. **Third Amended Complaint**[1]

---

[1] As the third amended complaint repeats many of the same facts as the original and amended complaints, the undersigned will not repeat them here except where necessary to review the merits of the claims set

Plaintiff was employed by WMNY "at its Albany, New York branch from February 2018 until her termination." Dkt. No. 55 at 1. Dennis was employed by WMNY as the "Route Manager" of the Albany, New York branch. *Id*. at 2. Plaintiff asserts that Dennis "exercised immediate supervisory authority over [her] daily assignments, training, discipline, equipment, and route configuration." *Id*. Glass was employed by WMNY as a "managerial employee" at the Albany, New York branch. *Id*.

In February 2018, WMNY "hired Plaintiff as a Front-Load Commercial Driver." Dkt. No. 55 at 2. In March 2018, plaintiff successfully completed a "rigorous two-week corporate safety training program in Florida." *Id*. By completing the safety training program, plaintiff "demonstrate[d] full qualification and strict compliance with WMNY's safety protocols." *Id*. Following completion of the safety training program, WMNY "failed to provide [plaintiff] with the permanent front-load route she had been promised." *Id*. at 3. Rather, "management immediately assigned Plaintiff strenuous manual labor and helper-level tasks." *Id*. Plaintiff states that "[s]imilarly situated male [f]ront-[l]oad [d]rivers were not assigned these tasks." *Id*.

"At the time Plaintiff began her employment [with WMNY], she was the only female commercial truck driver at the Albany facility." Dkt. No. 55 at 3. Plaintiff alleges that WMNY "repeatedly advanced, trained, and promoted male employees into lucrative front-load trash driver positions over [her]" despite the male employees having "far less experience, no prior front-load training, or poor safety histories." *Id*. More specifically, plaintiff alleges

---

forth in the third amended complaint. Familiarity with the original complaint; amended complaint; August 26, 2025, Report-Recommendation & Order; September 22, 2025, Order on Report & Recommendation; December 1, 2025, Report-Recommendation & Order; December 22, 2025, Order; and August 5, 2026, Memorandum-Decision and Order is presumed. *See* Dkt. Nos. 1, 5, 6, 8, 11, 14, 54. For further details regarding the facts and claims underlying this action, reference is made to those aforementioned filings.

that WMNY promoted nonparties Wayne Hallenbeck, Antonio Balls-Suarez, Jason Bauer, and John Ryan to front-load trash driving positions despite these individuals having prior safety issues and no front-load driving experience. *See id*. at 3-4. Plaintiff also alleges that WMNY assigned Mr. Balls-Suarez to train Crom and promoted Crom over her to a front-load trash driver position, despite Crom not having the requisite licensing or any commercial driving experience prior to getting hired. *See id*. at 4. Plaintiff states that "WMNY never offered her equivalent training, development, or promotional opportunities [to] a front-load trash position." *Id*. at 4.

In April 2018, "Dennis ordered Plaintiff to perform commercial container delivery duties using an inadequate box truck equipped with a lift gate that was too small to safely support a standard 2-yard container." Dkt. No. 55. at 3. Plaintiff warned Dennis about this safety issue and "demonstrated the mechanical hazard." *Id*. "Dennis ignored the corporate safety protocols, dismissed the warning, and ordered Plaintiff to proceed with the deliveries." *Id*. "Because the equipment was unsafe for solo operation, [] Dennis was required to physically hold the heavy containers upright while Plaintiff operated the unsafe lift gate." *Id*. "During a delivery at the Troy Prep School location, a loaded container jerked violently on the undersized lift gate . . . injuring plaintiff's shoulder." *Id*. The injury to plaintiff's shoulder forced her to be placed on a "light-duty restriction" and to undergo physical therapy. *Id*. After plaintiff recovered from her shoulder injury, she was assigned to "a permanent split front-load route consisting of 50% trash collection and 50% recycling collection, which she performed successfully for several months." *Id*.

Plaintiff asserts that "Dennis systematically manipulated [her] route configurations to manufacture performance issues and force her termination." Dkt. No. 55 at 4. Plaintiff

claims that she was stripped of certain trash and recycling route segments and that those route segments were reassigned to nonparty Mr. Hallenbeck "to facilitate [his] advancement." *Id*. Plaintiff also asserts that she was denied the same level of "hands-on" training afforded to her male coworkers and expected to match their "historical performance metrics." *Id*.

In December 2018, Dennis removed certain stops on plaintiff's route "without prior notice" and gave them to nonparty Scott Corrado. Dkt. No. 55 at 4. "The following morning, Corrado verbally assaulted Plaintiff in front of multiple male coworkers, stating that she should leave the company." *Id*. "Dennis heard the verbal assault . . . and intentionally refused to intervene or correct the behavior." *Id*.

Additionally, "Dennis actively sought to socially isolate Plaintiff within the workplace." Dkt. No. 55 at 4. "Plaintiff obtained written verification confirming that [] Dennis explicitly instructed male employees not to speak to her." *Id*. Similarly, "Glass witnessed multiple incidents of discriminatory conduct." *Id*. at 5. After Dennis instigated a workplace confrontation with plaintiff, "Glass followed Plaintiff out of the facility and confronted her, actively accelerating and reinforcing the hostile work environment." *Id*.

In December 2020, Dennis "falsely accused Plaintiff of intentionally slowing her route to accumulate unauthorized overtime." Dkt. No. 55 at 5. "In November 2021, Plaintiff accepted a temporary assignment to assist a [Waste Management] Massachusetts branch after all male drivers declined." *Id*. Dennis used plaintiff's absence to train nonparty Earl Martin on her route. *See id*. Upon plaintiff's return to the Albany branch, Dennis modified plaintiff's route "in violation of corporate safety protocols." *Id*. Plaintiff escalated this safety issue to Mazzelli. *See id*. Dennis also reassigned plaintiff's primary work vehicle to be

used as a spare vehicle for the WMNY male employees and forced her "to operate a defective spare truck that could not safely exceed 45mph." *Id*. "Dennis denied the vehicle defect until Plaintiff submitted multiple written maintenance reports." *Id*.

In January 2021, plaintiff "reported a collapsing structural wall at Panera Bread in Latham, New York." Dkt. No. 55 at 5. While plaintiff serviced the location, the wall collapsed. *See id*. "Dennis failed to investigate the reported hazard and instead issued Plaintiff a pretextual disciplinary write up for an 'accident.'" *Id*.

On January 10, 2022, the vehicle assigned to plaintiff failed to start. *See* Dkt. No. 55 at 5. "Plaintiff requested to use the spare front-load truck sitting in the yard." *Id*. Dennis denied plaintiff's request and instead assigned the spare truck to nonparty Earl Martin. *See id*. at 6. Plaintiff states that Mr. Martin received training during her temporary assignment to the Waste Management Massachusetts branch and served as her "direct replacement" after she was terminated. *Id*.

Plaintiff questioned Dennis about the "disparate treatment" she received regarding access to work equipment. *See* Dkt. No. 55 at 6. In response, Dennis issued plaintiff a "discriminatory document," and he told her to "sign or go home." *Id*. Plaintiff states that the document effectively terminated her employment. *See id*. Dennis also claimed that plaintiff was "refusing to do her job" and attempted to manufacture a performance related reason for her termination. *Id*. Glass witnessed this conversation. *See id*. After plaintiff confronted Dennis, Glass followed plaintiff outside of the building. Once outside the building, plaintiff stated, "I'm tired of being treated like I don't fucking belong here." *Id*. Glass told plaintiff to lower her voice because Glass' daughter was sleeping inside of his

work vehicle. *See id*. Plaintiff told Glass that she recorded her interactions with Dennis and Glass, and Glass responded that he did the same. *See id*.

B. **Gender Discrimination**

As stated in the December 1, 2025, Report-Recommendation & Order, at the pleading stage, "[f]or employment discrimination claims under Title VII or the NYSHRL, a plaintiff must 'plausibly allege that (1) the employer took adverse action against [her] and (2) [her] . . . sex . . . was a motivating factor in the employment decision.'" *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)); Dkt. No. 5 at 10. "A plaintiff may do this by 'alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.'" *Id*.

"Under the NYSHRL,[2] individual liability attaches where an employee is shown to have an ownership interest or any power to do more than carry out personnel decisions

---

[2] In June 2019, the New York State Legislature amended the NYSHRL and liberalized the pleading standards for claims to align closer with the New York City Human Rights Law ("NYCHRL"). *See* Dkt. No. 5 at 15-17; *see also Herrera v. Syracuse Univ.*, No. 5:24-CV-245 (AMN/ML), 2025 WL 874734, at *15 (N.D.N.Y. Mar. 20, 2025) (quoting *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021)); *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122-23 (2d Cir. 2024) (citing N.Y. Exec. Law § 300). Under the pre-amendment standard, in order to plead an "employment discrimination claim[] under . . . the NYSHRL, a plaintiff must 'plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.'" *Farmer*, 473 F. Supp. 3d at 324 (quoting *Vega*, 801 F.3d at 87). "A plaintiff may do this by 'alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.'" *Id.* (quoting *Vega*, 801 F.3d at 87). Under the post-amendment standard, "the plaintiff need only show differential treatment – that she is treated less well – because of a discriminatory intent." *Herrera*, 2025 WL 874734, at *15 (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (citing *Williams v. N.Y.C. Hous. Auth.*, 61 A.D. 3d 62, 77 (1st Dept. 2009))) (internal quotation marks omitted).

The law in this area is currently unsettled, leading courts within the Second Circuit to analyze NYSHRL employment discrimination claims under both standards, treating them as "coextensive." *Ricciardo v. NYU Hosps. Ctr.*, No. 22-CV-4952 (MKB), 2025 WL 2208371, at *25 (E.D.N.Y. Aug. 4, 2025) (additional citations omitted) ("[T]he Second Circuit has noted that the New York Court of Appeals has constru[ed] the NYSHRL and NYCHRL claims together in [a]pplying the mandate to interpret these laws broadly, and lower courts have treated NYSHRL and NYCHRL claims as coextensive."); *Herrera*, 2025 WL 874734, at *15 ("While Second Circuit courts are currently split over the extent to which NYSHRL standards should be

made by others . . . essentially . . . the authority to hire or fire people." *Zheng v. Gen. Elec. Co.*, No. 1:15-CV-1232 (TJM/CFH), 2015 WL 7421961, at *3 (N.D.N.Y. Oct. 26, 2015), *report and recommendation adopted,* No. 1:15-CV-1232 (TJM/CFH), 2015 WL 7430046 (N.D.N.Y. Nov. 20, 2015) (quoting *Pellegrini v. Sovereign Hotels, Inc.*, 740 F.Supp.2d 344, 355 (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrog. on other grounds, Burlington Indust., Inc. v. Ellerth,* 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998))) (internal quotation marks omitted); Dkt. No. 5 at 13-14.[3]

Upon reviewing plaintiff's third amended complaint, the undersigned concludes that plaintiff's gender discrimination claims under Title VII against WMNY and under the NYSHRL against WMNY and Dennis survive Section 1915 review.[4]

C. **Retaliation**

As discussed in the December 1, 2025, Report-Recommendation & Order, to plead a prima facie Title VII retaliation claim "the plaintiff must plausibl[y] allege that: (1) defendants discriminated – or took an adverse employment action – against [her]; (2) 'because' [she] has opposed any unlawful employment practice." *Krul v. Brennan*, 501 F. Supp. 3d 87, 99 (N.D.N.Y. 2020) (quoting *Vega*, 801 F.3d at 90). "In the context of a retaliation claim, an adverse employment action is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id*. (quoting

equated with NYCHRL standards, New York state courts have recently treated the two as coextensive.") (additional citations omitted).

[3] The Court has provided plaintiff with copies of the unpublished decisions cited within this Decision & Order except for those the Court provided her along with the August 26, 2025, Report-Recommendation & Order and the December 1, 2025, Report-Recommendation & Order.

[4] The undersigned proffers no conclusion on whether plaintiff's claims could survive a properly-filed and supported dispositive motion.

*Vega*, 801 F.3d at 90) (internal quotation marks and additional citation omitted). "As for causation, a plaintiff must plausibly plead a connection between the act and [her] engagement in protected activity." *Id.*, at 100 (quoting *Vega*, 801 F.3d at 90 (citing 42 U.S.C. § 2000e-3(a))). "[R]elevant here[,] a plaintiff engages in protected activity when she (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Jacobs v. Hudson Valley Fam. Physicians, PLLC*, 725 F. Supp. 3d 235, 247 (N.D.N.Y. 2024) (quoting *Davis v. NYS Dept. of Corr. Attica Corr. Facility*, 110 F.Supp.3d 458, 462 (W.D.N.Y. 2015) (quoting *Bundschuh v. Inn on the Lake Hudson Hotels, LLC*, 914 F. Supp. 2d 395, 405 (W.D.N.Y. 2012))) (internal quotation marks omitted); *see also Stathatos v. Gala Res., LLC*, No. 06 CIV. 13138 (RLC), 2010 WL 2024967, at *12 (S.D.N.Y. May 21, 2010) (citing 42 U.S.C. § 2000e-3(a)) ("Protected activity is that which opposes unlawful employment practices under Title VII."). "Protected activities can also include informal protests of discriminatory employment practices, including making complaints to management provided that they are sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII." *Id.* (quoting *Arkorful v. N.Y.C. Dept. of Educ.*, 712 F. Supp. 3d 336, 356 (E.D.N.Y. Jan. 24, 2024) (quoting *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012))) (internal quotation marks omitted).

Under the NYSHRL, following the 2019 amendment, a plaintiff asserting retaliation "must demonstrate that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Qorrolli*, 124 F.4th at 122 (quoting *Mihalik*, 715 F.3d at 112) (internal quotation marks omitted). Under the post-amendment standard,

demonstrating causation "only requires that the protected activity be a 'motivating factor' in the adverse action, and not its 'but-for' cause, as would be required under federal law." *Ronen v. RedRoute, Inc.*, 763 F. Supp. 3d 319, 333-34 (E.D.N.Y. 2025) (first quoting *Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 284 (S.D.N.Y. 2024) (citing *Mihalik*, 715 F.3d at 112); then citing *Chin v. N.Y.C. Dep't of Corr.*, No. 23-CV-5268 (AMD/JAM), 2024 WL 2258033, at *3 (E.D.N.Y. May 17, 2024))). However, "a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives." *Id*. (quoting *Mihalik*, 715 F.3d at 113); *see Forrester v. Corizon Health, Inc.*, 752 F. App'x 64, 66 (2d Cir. 2018) (summary order) (same).

Upon reviewing plaintiff's third amended complaint, the undersigned concludes that plaintiff's Title VII and NYSHRL retaliation claims against WMNY survive Section 1915 review.[5]

1. **NYSHRL Aiding and Abetting**

As previously discussed in the December 1, 2025, Report-Recommendation & Order, the Second Circuit "'recognizes a cause of action against individual employee perpetrators under Section 296(6) of the [NYSHRL]' where a plaintiff has sufficiently alleged a violation of the NYSHRL by the employer." *Trapani v. Freeport Pub. Sch. Dist.*, No. 24-CV-3005 (JS/SIL), 2025 WL 2306658, at *7 (E.D.N.Y. May 2, 2025), *report and recommendation adopted,* No. 24-CV-3005 (JS)(SIL), 2025 WL 1812324 (E.D.N.Y. July 2, 2025) (quoting *Lee*, 751 F. Supp. 3d at 290); *see Pellegrini v. Sovereign Hotels, Inc.,* 740 F.Supp.2d 344, 356 (N.D.N.Y. 2010) ("Importantly, since it is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability on

[5] *See supra* at n. 4.

others for aiding and abetting, a plaintiff cannot prevail against an individual on her state . . . claims unless she can first establish the liability of her employer.") (citations omitted).

"Under a theory of aiding and abetting, it is unlawful for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NYSHRL], or to attempt to do so." *Milner-Koonce v. Albany City Sch. Dist.*, No. 1:21-CV-1271 (LEK/CFH), 2023 WL 3748831, at *6 (N.D.N.Y. June 1, 2023) (quoting *Livingston*, 563 F. Supp. 3d at 256 (quoting N.Y. Exec. Law § 296(6))) (internal quotation marks omitted). "The Second Circuit has held that 'this language allow[s] a co-worker who actually participates in the conduct giving rise to a discrimination claim to be held liable under the NYSHRL . . . .'" *Id*. (quoting *Livingston*, 563 F. Supp. 3d at 256 (quoting *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004))); *Johnson v. Cnty. of Nassau*, 82 F. Supp. 3d 533, 536 (E.D.N.Y. 2015) (citation omitted) ("[A] plaintiff may succeed in a claim under the NYSHRL by showing the employer entity's having encouraged, condoned, or approved the discriminatory conduct of a sole employee – the same discriminatory conduct which then, perhaps 'circular[ly]', proves individual liability under the aiding and abetting provision of Section 296(6)."); *Tully-Boone v. N. Shore-Long Island Jewish Hosp. Sys.*, 588 F. Supp. 2d 419, 427 (E.D.N.Y. 2008) (citation omitted) (noting that aiding and abetting "creates a strange and confusing circularity where the person who has directly perpetrated the [unlawful discrimination] only becomes liable through the employer whose liability in turn hinges on the conduct of the direct perpetrator"). "A supervisor's failure to take adequate remedial measures in response to a complaint of discrimination has been deemed 'actual participation' under NYSHRL § 296(6)." *Id*. (quoting *Imperato v. Otsego Cnty. Sheriff's Dep't*, No. 3:13-CV-1594 (BKS/DEP), 2016 WL 1466545, at *28 (N.D.N.Y. Apr. 14, 2016)). "The same principle

applies to . . . hostile work environment claim[s] . . . ." *Id*. (quoting *Imperato*, 2016 WL 1466545, at *28).

Upon reviewing plaintiff's third amended complaint, the undersigned concludes that plaintiff's NYSHRL aiding and abetting retaliation claims against Dennis and Glass survive Section 1915 review.[6]

D. **Hostile Work Environment**

"Historically, a hostile work environment claim under the NYSHRL required a showing [1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Johnson v. Stop & Shop Supermarket Co., LLC*, No. 22-CV-9691 (KMK), 2024 WL 1217074, at *13 (S.D.N.Y. Mar. 21, 2024) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997))) (internal quotation marks omitted). However, as discussed above, the NYSHRL was amended in 2019 "to eliminate the 'severe or pervasive' requirement in favor of a more lenient standard of liability." *Id*. (quoting *Mayorga v. Greenberg*, No. 22-CV-387 (AMD)(RML), 2023 WL 6307994, at *8 (E.D.N.Y. Sept. 28, 2023); *see McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (quoting N.Y. Exec. Law § 300) ("the NYSHRL was amended to direct courts to construe the NYSHRL . . . 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have

[6] The undersigned makes clear that in concluding such, he acknowledges that an aiding and abetting claim against Dennis or Glass could only succeed if plaintiff can demonstrate that WMNY retaliated against her, and that he makes no findings on whether either claim will be able to survive a properly filed and supported dispositive motion.

been so construed'"). Under the updated standard, "plaintiffs need to show only that they were subjected to inferior terms, conditions, or privileges of employment *because of [their] membership in one or more protected categories*." *Id*. (quoting *Tortorici v. Bus-Tev, LLC*, No. 17-CV-7507 (PAC)(KHP), 2021 WL 4177209, at *13 (S.D.N.Y. Sept. 14, 2021)).

"An employer's liability for a hostile work environment claim depends on whether the underlying harassment is perpetrated by the plaintiff's supervisor or a non-supervisory coworker." *Maiurano v. Cantor Fitzgerald Sec.*, No. 19 CIV. 10042 (KPF), 2021 WL 76410, at *5 (S.D.N.Y. Jan. 8, 2021) (citing *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015)). "When the offending employee is a non-supervisory coworker, 'an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action.'" *Id*. (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004)).

> If, however, harassment is perpetrated by a supervisor within the meaning of Title VII, the employer is strictly liable, unless the employer is able to establish an affirmative defense showing that it exercised reasonable care to prevent and correct any harassing behavior and that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm otherwise.

*Maiurano*, 2021 WL 76410, at *5 (quoting *Wiercinski*, 787 F.3d at 113 (internal quotation marks omitted).

Upon reviewing plaintiff's third amended complaint, the undersigned concludes that plaintiff's Title VII and NYSHRL hostile work environment claims against WMNY, and NYSHRL aiding and abetting a hostile work environment claims against Dennis and Glass survive Section 1915 review.[7]

[7] The undersigned makes clear that in so recommending, he acknowledges that an aiding and abetting claim against Dennis or Glass may only succeed if plaintiff can demonstrate the creation of a hostile work

## IV. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that the Clerk of the Court shall add Waste Management of New York, L.L.C., to the caption; and it is further

**ORDERED**, that plaintiff's Third Amended Complaint (Dkt. No. 55) survives initial review; and it is further

**ORDERED,** that the Clerk of the Court provide plaintiff with a blank summons; and it is further

**ORDERED**, that plaintiff is to fully complete the proposed summons for defendants Waste Management of New York, L.L.C., James Dennis, and Michael Glass and provide it to the Clerk of the Court within thirty (30) days of the filing date of this Order; and it is further

**ORDERED**, that once the Clerk has received from plaintiff the completed, proposed summons for defendants Waste Management of New York, L.L.C., James Dennis, and Michael Glass, that the Clerk shall issue it and forward it, along with a copy of the complaint and a packet containing General Order 25, which sets forth the Civil Case Management Plan used by the Northern District of New York, to the United States Marshal for service upon defendants Waste Management of New York, L.L.C., James Dennis, and Michael Glass; and it is further

**ORDERED**, that a formal response to the Complaint is to be filed by defendants or counsel as provided for in the Federal Rules of Civil Procedure, after proper service of

environment against WMNY, and that he makes no findings on whether either claim will be able to survive a properly-filed and supported dispositive motion.

process on the defendants Waste Management of New York, James Dennis, and Michael Glass; and it is further

**ORDERED**, that the Clerk is directed to schedule a Rule 16 Conference before the assigned Magistrate Judge.

Dated: September 11, 2026
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge